## Stern Estate

*Martin Novack,* for the State of Israel.
*Donald Saxton,* for the commonwealth.
*Daniel McIntyre,* for the estate.

WATSON, *J.,* May 5, 1988 — This matter is before the court for disposition of petition for citation

to determine disputed inheritance tax filed by Jack Palkovitz (now deceased), executor for the estate of Ethel Stern, deceased.

The pertinent issue in this matter is whether a bequest of money in trust to a foreign government to be used for charitable purposes is entitled to a charitable exemption pursuant to section 1711 (c)(2) of the Inheritance and Estate Tax Act of 1982, 72 Pa. C.S. §1711 (c)(2), if the foreign government engages in some activities which result in propaganda or attempts to influence legislation.

The estate and the commonwealth were represented by counsel. Both parties filed a memorandum in support of his position. No testimony was taken.

All references in this opinion refer to information presented in the memoranda.

## FACTS

Ethel Stern, a resident of Allegheny County, died testate on July 27, 1984. Paragraph third of her will dated December 26, 1978 left the residue of her estate, valued at approximately $145,418.22, in trust to the State of Israel. This paragraph reads as follows:

"I give, devise and bequeath all of the rest, residue and remainder of my estate whatsoever and wheresoever the same may be situate at the time of my demise, unto the State of Israel, to be by it used for the purpose of relocating and rehabilitating Jewish immigrants migrating to the State of Israel."

On August 3, 1984, Ethel Stern's will was probated and letters testamentary granted thereon to Jack Palkovitz. By notice of inheritance tax appraisement, allowance or disallowance of deductions and assessment of tax dated September 30, 1985, the

Commonwealth of Pennsylvania, Department of Revenue, allowed a charitable exemption of $122,365.33.

Pursuant to section 1786 (a)(1) of the Inheritance and Estate Tax Act of 1982 (72 Pa.C.S. §1786 (a)), by letter dated October 17, 1985, the Commonwealth of Pennsylvania, Estate Examination Unit, filed a protest with the Commonwealth of Pennsylvania, Department of Revenue, Board of Appeals, alleging that the allowance of the charitable exemption by the Department of Revenue was improper. The Board of Appeals by order dated January 2, 1986 ruled in favor of the Estate Examination Unit and disallowed the charitable deduction.

On February 4, 1986, the estate of Ethel Stern appealed the Board of Appeals' decision by petitioning this court to determine the disputed inheritance tax.

Jurisdiction for this court to hear the estate's appeal from the decision of the Board of Appeals is established under section 1786 (a)(3) of the Inheritance and Estate Tax Act of 1982. This section reads:

"(a) Any party in interest, including the commonwealth and the personal representative, not satisfied with the appraisement, the allowance or disallowance of deductions, the assessment of tax, or supplements or any other matter relating to any tax imposed by this chapter, within 60 days after receipt of notice of the action complained of may:

"(3) appeal to the court to have the action complained of determined at the audit of the account of the personal representative, or at a time the court shall fix." 72 Pa.C.S. §1786 (a)(3)

Section 1788 (a) of the Inheritance and Estate Tax Act of 1982 (72 Pa.C.S. §1788 (a)) provides:

"(a) [W]hen an appeal is taken from the decision of the department, or the court directs the depart-

ment to transmit the entire record to the court, the court shall either proceed to a determination of the issues protested to the department or suspend the determination until the audit of account of the personal representative."

Based upon both memoranda filed by the parties there is only one basic question of fact and law at issue, the commonwealth having conceded that Ethel Stern's will creates a trust with the State of Israel as trustee and that the trust money is to be used for a charitable purpose.

That question is the applicability of the propaganda clause found in section 1711 (c)(2) of the Inheritance and Estate Tax Act of 1982. Section 1711 (c)(2) reads:

"(c) *Charitable and fraternal organizations* — Transfer of property to or for the use of any of the following are exempt from inheritance tax.

"(2) Any trustee or trustees, or any fraternal society, order or association, operating under the lodge system, but only if the property transferred is to by used by the trustee or trustees, or by the fraternal society, order or association, exclusively for religious, charitable, scientific, literary or educational purposes, or for the prevention of cruelty to children or animals, and *no substantial part of the activities of the trustee* or trustees, or of the fraternal society, order or association, *is carrying on propaganda or otherwise attempting to influence legislation.*" 72 Pa.C.S. §1711 (c)(2) (emphasis supplied)

## DISCUSSION

The commonwealth argues that, "the State of Israel certainly carries on propaganda or attempts to influence legislation in this country and elsewhere." Without question, this argument can be applied not

only to Israel, but to any and all successful sovereignties currently in existence.

A close analysis of section 1711 (c)(2) reveals an operative word to be "substantial."

Any reasonably successful country has many functions: care for its citizenry, operation of some form of industry, arranging for food, clothing and shelter, internal and external security, including police, armies and other defense matters, passage of legislation, regulating the overall function of its citizenry for the total well-being of the entire country, inter alia. We believe that these few functions herein mentioned will suggest the tens of thousands of different kinds of operations that any successful country must undertake.

Assuming and, in fact, believing that at some time or another Israel does carry on propaganda and attempt to influence legislation, the question becomes, is that a "substantial" part of its activities? We do not think so. Even a casual reading of the section under consideration indicates that it is beamed primarily at lobby-type propaganda groups, some of which are independent and others a part of a larger special-interest group. Rarely is lobbying a *substantial* part of *the activities* of any entity unless that is the *primary purpose* for its existence. The general assembly displayed the wisdom of approaching this section of the act before us by means of prohibiting activities rather than purpose, the former being observable and more readily established than the latter which requires an examination of the objective acts to determine subjective intent (or purpose).

"Substantial" in the context of evidence is defined as meaning such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Drexelbrook Inn Inc. v. Pennsylvania Labor*

*Relations Bd.*, 41 Delaware Rep. 290. There are myriad other case citations, all of which define "substantial evidence" as something of real value and not illusory concepts possibly of value at one time and virtually valueless at another.

"Substantial," as defined in Black's Law Dictionary (5th ed.), is, "Of real worth and importance; of considerable value. Belonging to substances; actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable. Something worth while as distinguished from something without value or merely nominal. Synonymous with material." As defined in Webster's New Collegiate Dictionary, "substantial" is something "consisting of or relating to substance (a fundamental or characteristic part or quality)."

Assuming, arguendo, that Israel carries on propaganda, it would seem to us that the operation is minuscule in relation to the many other functions required of any country.

The fact is that the only basis we have for assuming Israel carries on propaganda at all is the statement contained in the commonwealth brief that the State of Israel, "[c]ertainly carries on propaganda or attempts to influence legislation in this country and elsewhere." As a counter to that statement petitioners state that the State of Israel does not even have a paid lobbyist.

A matter with which we are even more concerned is whether the State of Israel, as trustee, will use trust money to carry on propaganda or attempt to influence legislation. It is, therefore, incumbent upon this court to look beyond the natural conduct of a successful sovereignty to the required conduct of a trustee fiduciary and determine whether the State of Israel is capable of meeting the required conduct

of a trustee fiduciary under the terms of Ethel Stern's will.

A trustee fiduciary is required by law to comply with the provisions and conditions of the instrument creating the trust. In the instant case, the instrument creating the trust is Paragraph Third of the decedent's will. As we have stated earlier this paragraph provides:

"I give, devise and bequeath all of the rest, residuary and remainder of my estate, whatsoever and wheresoever the same may be situate at the time of my demise, unto the State of Israel, to be by it used for the purpose of relocating and rehabilitating Jewish immigrants migrating to the State of Israel."

The condition and provisions of Paragraph Third of decedent's will clearly stipulates that the trust is for the sole purpose of relocating and rehabilitating Jewish immigrants migrating to the State of Israel. We have no reason to believe and certainly no proof that the State of Israel will use the funds for anything other than the purposes stated in the will.

The commonwealth cites section 1711 (b) of the act before us which states:

"*Governments* — Transfers of property to or for the use of any of the following are exempt from inheritance tax:

"(1) The United States of America.

"(2) The Commonwealth of Pennsylvania.

"(3) A political subdivision of the Commonwealth of Pennsylvania."

They argue that if foreign governments were intended to be included the general assembly would have specifically so stated.

This argument fails because the bequest is not to a foreign government as beneficiary but as trustee for a clearly specified purpose.

For the reasons herein contained it is our opinion that this bequest is exempted from the payment of Pennsylvania inheritance tax.`

An appropriate order has been entered.`

## ORDER OF COURT

And now, April 16, 1987, it appearing that the State of Israel as trustee of a charitable trust created by an American citizen residing in the Commonwealth of Pennsylvania stands in the same position as any other citizen or foreign trustee of a Pennsylvania charitable trust or organization and that the State of Israel as trustee is required to comply with the provisions of the trust instrument and the laws of the Commonwealth of Pennsylvania, it is hereby ordered and decreed that the decision and order of the Board of Appeals denying the State of Israel charitable status is reversed and the original action taken by the Department of Revenue in granting a charitable inheritance tax exemption is hereby affirmed.